# IN THE SUPREME COURT OF IOWA

No. 15–0829

Filed October 27, 2017

**STATE OF IOWA,**

Appellee,

vs.

**KHASIF RASHEED WHITE,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Appellant challenges imposition of minimum term of incarceration without eligibility for parole following a resentencing hearing. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Jane M. White of Jane White Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Timothy M. Hau, Assistant Attorney General, John Sarcone, County Attorney, and James Ward, Assistant County Attorney, for appellee.

**CADY, Chief Justice.**

In this case, we must decide if the hearing conducted by the district court to determine if a juvenile offender should be sentenced to a minimum term of incarceration without eligibility for parole complied with constitutional safeguards. We conclude it did not. We vacate the decision of the court of appeals, reverse the sentence of the district court, and remand for resentencing.

## I. Background Facts and Proceedings.

Khasif White was convicted and sentenced for three separate crimes of robbery in the second degree. The crimes were committed over a period of seven months, while White was seventeen years old. The first crime occurred on August 1, 2009. White shoplifted a bottle of liquor from a grocery store and assaulted a store employee who attempted to detain him. The second crime occurred on September 12, 2009. White shoplifted merchandise from a clothing store and assaulted a store employee who attempted to detain him. The third crime occurred five months later on February 20, 2010. White assaulted another person and attempted to take money from him. On each occasion, White was aided in his crimes by other individuals.

White was sentenced for his crimes on July 27, 2010. The court imposed a ten-year term of incarceration for each offense and imposed a statutory seven-year mandatory minimum period of incarceration without parole pursuant to Iowa Code section 902.12(5) (2009). The court ordered the three sentences to be served concurrently.

Four years later, the statutory period of incarceration before eligibility for parole for juveniles was found to be unconstitutional without an individualized assessment by the district court. *See State v. Lyle*, 854 N.W.2d 378, 400–04 (Iowa 2014). On April 30, 2015, White

appeared for resentencing to allow the district court to consider if he should serve the seven-year period of incarceration before becoming eligible for parole. White testified at the hearing, as did his mother. The State introduced a summary of White's record of disciplinary actions while in prison.

The district court concluded White should serve the seven-year period of incarceration before eligibility for parole. It primarily relied on two factors. First, it found that White's repeated arrests for criminal behavior as a juvenile revealed he had gained an understanding of the risks and consequences of his actions. It reasoned this greater understanding made him more mature and less impetuous. Second, it found White's prison record showed he had not grown more amenable to rehabilitation while in prison.

White appealed and raised two claims of error. First, White claimed the district court failed to properly consider all relevant sentencing factors, including his family and home environment. He also claimed the district court improperly considered the circumstances of his three arrests as an aggravating factor, instead of as a mitigating factor. He further argued the district court misused his prison record in considering his capacity for rehabilitation.

Second, White claimed the district court had no authority to impose a minimum period of incarceration without parole under Iowa Code section 902.12 (2015). He claims the statute is unconstitutional as applied to juveniles.

We transferred the case to the court of appeals. It rejected both claims of error. It concluded the district court properly considered the relevant sentencing factors. It also concluded the resentencing hearing

cured the constitutional infirmity of the mandatory minimum sentencing under section 902.12. White sought, and we granted, further review.

## II. Standard of Review.

Our standard of review from a decision by the district court to impose a period of incarceration without parole on a juvenile is for an abuse of discretion. *State v. Roby*, 897 N.W.2d 127, 137–38 (Iowa 2017).

## III. Application of Sentencing Factors.

We recently elaborated on the role of the district court in considering the eligibility of the juvenile offender for parole and how the primary factors relevant to the decision are to be considered at the sentencing hearing. *Id.* at 143–48. In particular, we emphasized the important role of expert testimony when applying the relevant factors. *Id.* at 145–48. The same scientific evidence responsible for revealing the constitutional infirmity of mandatory minimum sentencing statutes for juveniles must continue to inform judges in performing their difficult job of applying the relevant factors to decide if juveniles should be ineligible for parole for a minimum period of their incarceration. This testimony can help to explain juvenile behavior in the context of the relevant factors and give new understanding of the factors. It may even caution judges against using past attitudes and reasoning about juvenile crimes when applying the factors. Under this approach, actual sentencing outcomes will become better aligned with the purpose and goal of eliminating overly harsh sentences for juveniles.

In this case, the critical conclusions drawn by the district court at the sentencing hearing were not grounded in science but rather based on generalized attitudes of criminal behavior that may or may not be correct as applied to juveniles. Juvenile sentencing is now driven in large part by the development of brain science, and more evidence was needed for

the district court to properly conclude White was more mature and less impetuous because his three arrests gave him a greater appreciation of the risks and consequences of his actions. Likewise, more evidence was needed to conclude White's discipline record in prison made him less amenable to rehabilitation.

We recognize the district court in this case did not have the benefit of *Roby* at the time of the resentencing hearing. Had the decision been available, we are confident the district court would have followed a more rigorous and careful analysis of the relevant sentencing factors. Nevertheless, an abuse of discretion occurred and White is entitled to be resentenced under the approach identified in *Roby*.

## IV. Sentencing Authority of the District Court.

We reject the claim by White that the district court had no authority to resentence him under Iowa Code section 902.12. In *Lyle*, we found the statute unconstitutional under the cruel and unusual punishment clause of the Iowa Constitution, but only because the period of incarceration without parole was imposed without an individualized hearing. *Lyle*, 854 N.W.2d at 402–03. Thus, *Lyle* did not declare the entire statute unconstitutional, but merely wrote into the statute the requirement of an individualized assessment hearing.

## V. Conclusion.

We conclude White is entitled to be resentenced in light of *Roby*. Accordingly, we reverse the resentencing order of the district court and remand the case for resentencing.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Wiggins, Hecht, and Appel, JJ., join this opinion. Hecht, J., separately files a special concurrence. Appel, J., separately files a special

concurrence in which Wiggins, J., joins. Mansfield, J., files a dissenting opinion in which Waterman and Zager, JJ., join.

**HECHT, Justice (concurring specially).**

I concur in the court's determination that Khasif White's sentence must be vacated. I again write separately because I have concluded "that article I, section 17 of the Iowa Constitution prohibits a mandatory term of incarceration for any offense committed by a juvenile offender." *State v. Roby*, 897 N.W.2d 127, 149 (Iowa 2017) (Hecht, J., concurring specially).

**APPEL, Justice (concurring specially).**

For the reasons stated in my special concurrence in *State v. Roby*, for now I join the court's opinion. 897 N.W.2d 127, 150 (Iowa 2017) (Appel, J., concurring). I reiterate, "If implementation of this decision proves inconsistent, confusing, difficult, or unworkable, the obvious solution would be to move to the analysis in [*State v.*] *Sweet*, [879 N.W.2d 811 (Iowa 2016),] and categorically eliminate the application of adult mandatory minimum sentences to juvenile offenders." *Id.*

Wiggins, J., joins this special concurrence.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. I would not find that the district court abused its discretion. As a practical matter, the district court's April 30, 2015 resentencing order required Mr. White to serve approximately two more years in prison before becoming eligible for parole. This falls well within the district court's "broad discretion" in these matters. *See State v. Roby*, 897 N.W.2d 127, 161 (Iowa 2017) (Zager, J., dissenting).

As noted by the majority, White was convicted of three second-degree robberies. The most serious was the third, which White committed in February 2010 when he was less than two months short of his eighteenth birthday. White and two companions waited as an immigrant who spoke little English cashed a $480 check at a convenience store. They then followed this man back to his apartment. While one companion held the man down, White punched and kicked the man in the face and demanded the money. Others in the apartment building apparently heard the commotion and came to the man's assistance. White and the companions ran off but were apprehended. The man suffered visible abrasions on his forehead, nose, and leg as a result of White's assault.

White pled guilty to all three robberies under an agreement that the parties would recommend concurrent sentences. Second-degree robbery carries a ten-year sentence and, at that time, a requirement that the person serve seventy percent of the sentence before being eligible for parole. *See* Iowa Code § 711.3; *id.* §§ 902.9(4), .12(5) (2009). White received the jointly recommended concurrent sentences in July 2010.

In September 2014, White filed for resentencing in light of *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014). Before his resentencing took place,

the district court ordered the department of corrections to provide a progress report. The report described White's "lengthy history of disciplinary action" including "thirty-two major reports." Notably, even as the resentencing proceeding was pending, White incurred three additional major reports. By then, White was almost twenty-three years old. He was at offender privilege level 1 (on a 0 to 4 scale) and was not eligible for a job or any prison programming at that level.

Reasonable people can debate the appropriateness of the sentence in this case. Personally, I am convinced that White would have committed more crimes if he had not been incarcerated in 2010, but I question the length of time he has been required to serve. This seems too severe to me.

Yet I see no basis for my views to displace those of the district court. That court clearly considered all the *Miller/Ragland* factors. Here are the factors:

> (1) the "chronological age" of the youth and the features of youth, including "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the "family and home environment" that surrounded the youth; (3) "the circumstances of the . . . offense, including the extent of [the youth's] participation in the conduct and the way familial and peer pressures may have affected [the youth]"; (4) the "incompetencies associated with youth—for example, [the youth's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the youth's] incapacity to assist [the youth's] own attorneys"; and (5) "the possibility of rehabilitation."

*State v. Ragland,* 836 N.W.2d 107, 115 n.6 (Iowa 2013) (alterations in original) (quoting *Miller v. Alabama,* 567 U.S. 460, 477–78, 132 S. Ct. 2455, 2468 (2012)). And here are some relevant excerpts from what the court said at the resentencing:

> You had a very experienced public defender assisting you, although you were new to the criminal process in the sense

of, you know, being in adult court facing felony charges. So I appreciate that and I understand that.

Your family and home environment is something that we learned a little bit about today from your mother with regard to your father. I think that's something that the higher court wants the court, such as a judge such as myself, to consider, because it does have an impact when you see . . . someone, in your case father figure, committing harmful acts, potential criminal acts, and the way youth react to that. We understand it's not always positive and you're getting leadership in the wrong way. So I do appreciate that.

. . . .

. . . [T]hose three offenses, I think, need to be considered more seriously than the instance where there's just the one. That . . . plays directly into factor number three, but I think also it plays to factor number one. . . . I think the failure to appreciate risk and consequences go down as there are additional offenses. If you commit one and you do it again and then you do it again, I think as you repeated offenses, the appreciation of the risk and consequences becomes greater through the additional offenses.

So we get down to five. Possibility of rehabilitation, capacity for change. That's something that's really important for me. . . .

Your record isn't that good. And I appreciate what you say and particularly appreciate what your mother said. . . . But, you know, a lot of times actions speak louder than words. I would understand going to prison at 17 and having some problems adjusting, that I would understand. But your problems went on from 2010 through 2011 into 2012 to the point where you got into this program that sent you over to Fort Madison. There you did pretty well. And if that had been sustained in total, maybe I would look at it a little differently, though it would be tougher.

Then you got back to Anamosa and you had three major reports, including another assault. And the assault, you spoke to that, which I appreciate, but the assault is of concern.

Today's decision holds that what the district court did wasn't good enough. The district court not only needed to apply the *Miller/Ragland* factors to Mr. White, something it clearly did, but it also needed to

ground its application in juvenile brain science as filtered through expert testimony. Justice Zager has already thoroughly critiqued this fundamental redefinition of the *Miller/Ragland* factors. *See Roby*, 897 N.W.2d at 154–57, 161. I will not restate what he said in his *Roby* dissent. I will offer only two additional, hopefully new observations.

First, the majority confuses the general and the specific. It is one thing to say that science indicates that the brains of juveniles, *in general*, are less developed than those of adults. This was what the United States Supreme Court concluded in *Miller.* In the Supreme Court's view, this difference justified the elimination of a particularly harsh sentencing option for juveniles—mandatory life-without-parole. *Miller*, 567 U.S. at 470–71, 132 S. Ct. at 2464.

However, it is quite another thing to say it is possible to scientifically calibrate the sentence of any *particular* juvenile offender. This seems to me a fool's errand given what we know today. Criminal sentencing may be many things, but it isn't science.

To quote one observer who is sympathetic to the recent shift in juvenile sentencing law:

> We can look at a brain scan of a broad cross-section of adolescents and compare that with a brain scan of a broad cross-section of adults and see significant differences that might well justify substantial legal distinctions. But we neither know, nor even could know, where a particular adolescent is on the developmental curve.

Paul S. Davies & Peter A. Alces, *Neuroscience Changes More than You Can Think*, 2017 U. Ill. J.L. Tech. & Pol'y 141, 155 (2017).

Reread the five *Miller/Ragland* factors I've quoted above. These aren't matters of science. They are more accurately described as "tools for weighing juvenile culpability." That is why no one, until this court in

*Roby,* found that they needed to be presented to the sentencing court through expert testimony.

I fear that requiring a "scientific" basis for any mandatory minimum sentence, regardless of the crimes committed or the length of sentence, is simply a backdoor way of eliminating mandatory minimums.

Second, the majority continues to focus only on procedure, not substance. Telling district courts they need to utilize science and expert testimony in making their findings isn't helpful until you tell them *what* they need to find. In the context of life-without-parole sentences, the United States Supreme Court has been clear: no life-without-parole sentence unless the "crime[] reflects irreparable corruption." *Montgomery v. Louisiana,* 577 U.S. ___, ___, 136 S. Ct. 718, 734 (2016) (quoting *Miller,* 567 U.S. at 479–80, 132 S. Ct. at 2469).

Similar clarity regarding the Iowa standard would benefit our district judges. Our court has extended *Miller* to all mandatory minimums but has yet to say what the substantive standard is. Plainly it isn't "irreparable corruption"; we are talking in this case about a seven-year mandatory minimum. Still, our court hasn't told district courts what that standard is. This isn't about *moving* the goal posts. The court has yet to *erect* the goal posts.

Again, I fear the court's reluctance to provide some description of a constitutionally adequate mandatory minimum sentence for a juvenile means we are just on a way station toward eliminating all mandatory minimums for juveniles.

For the foregoing reasons, and those set forth in Justice Zager's *Roby* dissent, I would affirm the district court's resentencing order.

Waterman and Zager, JJ., join this dissent.